2021R00438/JF & EL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Susan D. Wigenton |
| | : | |
| | : | Criminal No. 21- 482 |
| v. | : | |
| | : | 18 U.S.C. § 1349 |
| | : | |
| JAHAAD FLIP | : | |

**I N F O R M A T I O N**

The defendant having waived in open court prosecution by indictment, the Acting United States Attorney for the District of New Jersey charges:

**Background**

1. At times material to this Information:

    a. Defendant JAHAAD FLIP ("FLIP") was a resident of Newark, New Jersey. From in or about August 2019 to in or about September 2019, FLIP was employed as a letter carrier at the United States Post Office in Westfield, New Jersey ("the Westfield PO").

    b. Co-Conspirator 1 ("CC-1") was a resident of Newark, New Jersey, and employed as a clerk at the United States Post Office in Summit, New Jersey ("the Summit PO").

    c. Co-Conspirator 2 ("CC-2") was a resident of Irvington, New Jersey.

1

    d. Co-Conspirator 3 ("CC-3") was a resident of Hillside, New Jersey.

    e. Ayanah Sade McCall ("McCall") was employed as a clerk at the Summit PO.

    f. Student 1 was a student at a high school in New Jersey ("NJHS").

    g. Individual 1 was a resident of Bridgewater, New Jersey.

    h. The victim financial institutions, including Bank 1 and Bank 2, were "financial institutions" whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") or whose accounts were insured by the National Credit Union Insurance Fund ("NCUIF").

    i. The Coronavirus Aid, Relief, and Economic Security Act authorized economic impact payment ("EIP") checks issued by the U.S. Department of Treasury to certain eligible taxpayers of $1,200 for individuals, $2,400 for married couples filing jointly, and up to $500 for each qualifying child.

## The Conspiracy

 2. From in or about February 2019 to in or about May 2020, in Essex and Union Counties, in the District of New Jersey and elsewhere, defendant

**JAHAAD FLIP**

knowingly and intentionally did conspire and agree with CC-1, CC-2, CC-3, McCall, and others (collectively, the "Co-Conspirators") to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United

2

States Code, Section 20, whose deposits were insured by the FDIC and whose accounts were insured by the NCUIF, and to obtain monies, funds, assets, and other property owned by and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### Goal of the Conspiracy

3. It was the goal of the conspiracy for FLIP and the Co-Conspirators to enrich themselves by fraudulently obtaining money from victim financial institutions by, among other things, depositing counterfeit checks and checks stolen from the United States Postal Service ("USPS") into bank accounts at victim financial institutions and withdrawing funds from those accounts before the victim financial institutions identified the fraudulent checks and blocked further withdrawals.

### Manner and Means of the Conspiracy

4. It was part of the conspiracy that:

   a. FLIP and the Co-Conspirators arranged for USPS employees, including CC-1 and McCall, to steal credit cards and blank checkbooks from the United States mail in exchange for cash payments.

   b. CC-1 and McCall removed envelopes and packages containing credit cards and blank checkbooks from financial institutions that were in the mail at the Summit PO, which were intended to be delivered to residents of Summit and New Providence, New Jersey.

   c. USPS employees, including CC-1 and McCall, provided stolen checkbooks and credit cards to FLIP and the Co-Conspirators (the "Stolen Checks").

   d. FLIP and the Co-Conspirators paid approximately $100 for each stolen checkbook or credit card they received from CC-1 and McCall.

   e. FLIP and the Co-Conspirators solicited accountholders at various financial institutions, including NJHS students (the "Complicit Accountholders"), to provide their banking information to the Co-Conspirators in exchange for the promise of cash.

   f. FLIP and the Co-Conspirators fraudulently negotiated and endorsed the Stolen Checks in the names of the Complicit Accountholders, including Student 1 and Individual 1, and deposited and attempted to deposit the Stolen Checks into the accounts of the Complicit Accountholders (the "Fraud Accounts").

   g. FLIP and the Co-Conspirators created counterfeit checks, including counterfeit EIP checks, and deposited and attempted to deposit the counterfeit checks into the Fraud Accounts.

   h. After depositing the Stolen Checks and counterfeit checks into the Fraud Accounts, FLIP and the Co-Conspirators withdrew as much money as possible from the Fraud Accounts via automated teller machines ("ATMs") before the victim financial institutions identified the checks as fraudulent and blocked further withdrawals from the Fraud Accounts.

    i. For example, on or about October 3, 2019, FLIP deposited three fraudulent checks in the total approximate amount of $6,935 into FLIP's Bank 1 account at an ATM in New Jersey, including one check reported as stolen from the Westfield PO, where he had previously been employed as a letter carrier.  On or about October 4, 2019, FLIP attempted to deposit online eight fraudulent checks into the same Bank 1 account in the total approximate amount of $1,314.50, including two checks stolen from the Westfield PO.  On or about October 4, 2019, FLIP withdrew approximately $92.25 from his Bank 1 account at an ATM in New Jersey and made two online transfers of approximately $175 from the Bank 1 account, before Bank 1 identified the deposits as fraudulent.  On or about October 8, 2019, FLIP deposited online three additional checks stolen from the Westfield PO, which were later returned as fraudulent by Bank 1.

    j. On or about December 10, 2019, FLIP recruited Individual 1 over text message to provide banking information regarding Individual 1's Bank 2 account in exchange for the promise of cash.  On or about December 11, 2019, using the banking information that Individual 1 provided, FLIP caused a counterfeit check in the approximate amount of $4,980.65 to be deposited into Individual 1's Bank 2 account at an ATM in New Jersey.  On or about December 11, 2019, prior to the check being identified as fraudulent, FLIP caused approximately $200 to be withdrawn from Individual 1's Bank 2 account at an ATM in New Jersey.

k.      On or about May 9, 2020, FLIP and CC-3 deposited approximately four counterfeit EIP checks and four checks stolen from the Summit PO into Student 1's Bank 2 account at an ATM in New Jersey in the total approximate amount of $7,596.  The counterfeit EIP checks used the same unique identifying numbers as those printed on a legitimate EIP check issued to FLIP by the U.S. Department of Treasury on or about April 24, 2020.

l.      Using the manner and means described herein, the Co-Conspirators obtained and attempted to obtain hundreds of thousands of dollars from the victim financial institutions.

In violation of Title 18, United States Code, Sections 1349 and 2.

## FORFEITURE ALLEGATION

1. The allegations contained in this Information are hereby realleged and incorporated by reference for the purposes of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. The United States hereby gives notice to defendant

## JAHAAD FLIP

that, upon conviction of the offense charged in this Information, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(2)(A), of any and all property, real and personal, that constitutes and is derived from proceeds FLIP obtained directly or indirectly as a result of the violation of Title 18, United States Code, Section 1349 alleged in this Information.

## SUBSTITUTE ASSETS PROVISION

3. If by any act or omission of FLIP, any of the property subject to forfeiture described herein:

      A. cannot be located upon the exercise of due diligence;

      B. has been transferred or sold to, or deposited with, a third party;

      C. has been placed beyond the jurisdiction of the court;

      D. has been substantially diminished in value; or

      E. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p).

*[signature]*
RACHAEL A. HONIG
Acting United States Attorney

| Case Number: _____ |
|---|
| **United States District Court** <br> **District of New Jersey** |
| UNITED STATES OF AMERICA <br> v. <br> **JAHAAD FLIP** |
| **INFORMATION FOR** <br> 18 U.S.C. § 1349 |
| Rachael A. Honig <br> Acting United States Attorney <br> For the District of New Jersey <br><br> Jonathan Fayer <br> Elaine K. Lou <br> Assistant U.S. Attorneys <br> Newark, New Jersey <br> 973-645-2700 |